O

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **DAVID RAY GALLEGOS,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | **Civil Action No. 5:04-cv-147** |
| **v.** | § | **Criminal No. 5:01-cr-661** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| *Respondent*. | § | |

## OPINION AND ORDER

Pending before the Court is Petitioner David Ray Gallegos' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. [Dkt. No. 3]. Upon due consideration of Petitioner's Motion, the governing law, and evidence presented by Petitioner and the United States, the Court **DENIES** Petitioner's Motion.


## I.      PROCEDURAL BACKGROUND AND RELEVANT FACTS

On December 17, 2001, Petitioner was convicted of possession with the intent to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), as well as possession with the intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). [Cr. Dkt. No. 50]. He was subsequently sentenced to 135 months imprisonment. *Id.* On direct appeal, the Fifth Circuit affirmed Petitioner's sentence and conviction. [Dkt. No. 59 at 11-13].

Petitioner, a truck driver before his conviction, was arrested after a highway Border Patrol checkpoint inspection revealed the presence of the aforementioned controlled substances in his

trailer. At trial, Petitioner argued that he was a "duped driver"—that he was hired to deliver the trailer to San Antonio, and that he believed he was carrying a legitimate cargo. As such, the only issue at trial was whether Petitioner had the requisite knowledge of the presence of controlled substances in the trailer.

To prove knowledge, the government argued, among other things, that Petitioner did not possess at the time of his arrest a "bill of lading" for the trailer, an administrative document truck drivers usually possess when hauling a legitimate load.[1] Thus, the issue of whether Petitioner possessed a bill of lading on the night of his arrest was important at trial: evidence that he did would support his claim that he *believed* he was hauling legal cargo.

At trial, an investigating officer admitted to misplacing the trailer seal, which that officer was required to remove from the back of the trailer in order to inspect the contents thereof. [Tr. Vol. 2 at 92, 128]. It is no surprise, then, that Petitioner's defense theory was that the government's "sloppy" police work so undermined the integrity of its case such that its evidence could not fairly support a conviction. It is within this context that Petitioner claims the government either deliberately discarded, or inadvertently misplaced, the personal possessions he was carrying on the night of his arrest, which he claims included his driver's license and a bill of lading. Although counsel at trial was cognizant of Petitioner's position, counsel never called Petitioner, or anyone else for that matter, to the stand in order to rebut the government's claim that Gallegos in fact did not possess such documentation. According to Petitioner, such testimony would have meshed well with his overall defense theme, and it was therefore irresponsible for counsel not to offer such evidence at trial.

---

[1] Specifically, a bill of lading is a document usually cataloguing the contents of the respective trailer. [Tr. Vol. 2 at 120]. It also contains a number matching that on the trailer "seal," a ring, usually made of plastic, that must be broken in order to open the trailer doors. *Id.* at 127. One purpose the seal serves is to indicate whether the trailer has been inappropriately accessed before reaching its ultimate destination. *Id.*

On October 4, 2004, Gallegos filed *pro se* the § 2255 motion now before the Court, asserting that he suffered ineffective assistance of counsel in violation of his Sixth Amendment rights because: (1) counsel failed to allow Petitioner to testify in order to rebut the government's claim that he did not possess a bill of lading or diver's licence on the night of his arrest; (2) counsel failed to call Petitioner's wife to testify for the same purpose; (3) counsel failed to request a continuance upon learning, on the eve of trial, that the government was going to argue via a key witness that, when arrested, Petitioner did not possess a driver's licence and a bill of lading; (4) counsel failed to "move the court for an expert in the field of polygraphy;" (5) counsel failed to timely object when the government elicited improper state-of-mind testimony from an expert witness; (6) counsel failed to object to a curative instruction provided by the trial judge, and for failing to request a less confusing instruction; (7) the "cumulative effect of trial counsel's ineffectiveness denied Petitioner . . . effective assistance;" and (8) appellate counsel was ineffective in failing to advance the above seven arguments on direct appeal. [Dkt. No. 3].

On August 8, 2006, the Court ordered the United States to file a response to Petitioner's Motion, [Dkt. No. 6], and thereafter held an evidentiary hearing on May 24, 2007.

## II.    DISCUSSION

Denial of a § 2255 motion is warranted when, after review of the petitioner's motion and all evidence on the record, "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . ." 28 U.S.C. § 2255 Proc. R. 4(b).

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The standard governing ineffective

assistance claims was established by the Supreme Court in *Strickland*; specifically, a party claiming ineffective assistance must show: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result. *Id.* at 687. The Supreme Court has noted that a reviewing court may consider these prongs in either order. *Id.* at 697. Thus, to the extent that doing so facilitates efficient disposal of Petitioner's claims, the Court will only address whether Petitioner has demonstrated prejudice as a result of an alleged attorney error.

## A.  Failure to Offer Exculpatory Testimony

Petitioner first argues that he suffered ineffective assistance by way of counsel's failure to call Defendant and his wife to the stand in order to rebut the government's evidence that Petitioner did not possess a bill of lading on the night of his arrest.

"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Additionally, in considering the evidence presented in a habeas evidentiary hearing, a petitioner cannot win relief by demonstrating the mere *possibility* of prejudice as a result of the alleged dereliction in question. Rather, the petitioner must be able to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

First, Petitioner's former wife recently admitted in open court that she was unwilling to testify at Petitioner's trial, during which she was pregnant, due to the negative effects on her

4

health the experience might invite. Second, although Petitioner claimed in his § 2255 brief that he was not *allowed* to testify, he admitted at the evidentiary hearing that he was *advised* not to testify by trial counsel,[2] and he simply—and probably wisely—heeded that advice. Counsel testified that his recommendation was based on the dangerous prospect of Petitioner "opening the door" to issues which, if pursued on cross-examination, might harm Petitioner's credibility.[3] Such is precisely the type of strategic decision that commands deference from a reviewing habeas court. Thus, there is no basis for ineffective assistance by way of counsel's failure to call either Petitioner or his wife to testify at trial.

### B.  Failure to Investigate

Petitioner further argues that counsel was ineffective for his failure to request a continuance upon learning, on the eve of trial, that the government was going to argue via a key witness that Petitioner did not possess a bill of lading when arrested. The government witness in question was Officer Francisco Betancourt, the Border Patrol Agent who initially referred Petitioner to secondary inspection, and who, with another officer, initially detained Petitioner and inspected his trailer.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, even assuming for the moment that counsel erred in not requesting a continuance to interview Agent

---

[2] Trial counsel testified that he discussed with Petitioner the pros and cons of testifying, but did not specifically advise Petitioner against taking the stand. For present purposes, however, this is irrelevant as Petitioner recently admitted that the ultimate decision not to testify was his own.

[3] Prior to trial, counsel, via a motion *in limine*, moved the trial court to exclude evidence of Petitioner's previous convictions. [Dkt. No. 17; Criminal Folder, Tab 17]. The court ruled in Defendant's favor. [Trial Tr. Vol. 2 at 111-12; Criminal Folder, Tab 28]. Defense counsel could thereafter rely on that ruling only insofar as Petitioner refrained from subsequently "opening the door" to discussion of his criminal history; placing Petitioner on the stand would have created that very risk. *See Dowell v. Lensing*, 805 F. Supp. 1335, 1361 (M.D. La. 1992) ("[C]ounsel's basic decision or advice to not have the petitioner testify was not ineffective assistance of counsel, as it was a matter of reasonable trial strategy to not open the door and allow the prior convictions . . . to be placed before the jury, even for impeachment.").

Betancourt, any prejudice suffered by Defendant as a result is not enough to undermine confidence in the outcome of Petitioner's trial.

The only evidence Petitioner could have offered at trial that he in fact did possess a bill of lading was his own testimony, as it is now clear Petitioner's wife would likely not have testified if asked to do so. However, even assuming counsel, for strategic reasons, advised Petitioner not to testify, Petitioner admitted that he heeded counsel's advice. There is no reason to conclude that, had counsel interviewed agent Betancourt before trial, he would have advised Petitioner differently. Additionally, even if Petitioner did testify, there is no basis for the Court to conclude that the jury would have found Petitioner's insistence that he did possess a bill of lading more credible than the government's evidence to the contrary.

Lastly, interviewing Agent Betancourt would not have clued counsel in to a defense theory previously unthought-of. That is, at the evidentiary hearing, counsel testified that he was made aware long before trial that the government had misplaced the seal to Petitioner's trailer. Thus, counsel had planned all along to argue that the government was sloppy and had "bumbled things." Indeed, counsel began his opening statement at trial by declaring to the jury "I can summarize for you what [the prosecution's] story is: poor police work." [Trial Tr. Vol. 2 at 100]. As such, it is difficult to see how a pre-trial interview with Agent Betancourt would have added to Petitioner's defense theory so much as to undermine confidence in the jury's verdict.

### C.  Failure to Obtain a Polygraph

Counsel's next alleged error was his failure to move for the administration of a polygraph (*i.e.*, "lie-detector test") of Petitioner, which, if admitted into evidence, would allegedly have proven Petitioner's lack of culpability. In advancing this argument, Petitioner focuses primarily on case law discussing the admissibility of polygraph results. Petitioner's argument is a textbook

*non sequitur*: it does not follow from the mere *admissibility* of evidence that an attorney acts irresponsibly in failing to tender it. This argument has no merit.

### D.  Failure to Object to Improper Expert Testimony

Petitioner next argues that he suffered ineffective assistance because counsel failed to object upon the prosecution's elicitation of improper state-of-mind testimony from its expert witness.

In attempting to prove Petitioner's culpability, the government tendered, and the district court accepted, Agent Keith Warzecha of the Drug Enforcement Agency as an expert in narcotics trafficking. During the course of his testimony, Agent Warzecha testified that he had never worked on a case in which a trafficking driver was unaware that he was transporting controlled substances. [Tr. Vol. 3 at 59]. Defense counsel objected on the ground that Warzecha was not permitted to testify, either directly or indirectly, as to Gallegos' knowledge, but the objection came only after the improper testimony was elicited. [Tr. Vol. 3 at 59]. Having agreed *in limine* that such testimony was inadmissible, [Dkt. No. 17; Criminal Folder, Tab 17], the district court sustained counsel's objection, and took counsel's motion for a mistrial under advisement.[4] [Tr. Vol. 3 at 60-61]. The court then issued a curative instruction. *Id.* Thereafter, the government immediately began eliciting the same forbidden testimony from Agent Warzecha, and once again, it was only after Agent Warzecha answered that trial counsel again moved for a mistrial. *Id.* at 63. Finally, the government relied on this improper testimony during its closing statement, to which defense counsel failed to object. [Tr. Vol. 3 at 211-12].

Upon the prosecution's elicitation of the improper testimony, the most counsel could have done was to object and move for a mistrial; he did both. The Motion for Mistrial was denied. While it is true that counsel failed to object each time the government improperly relied on the

---

[4] Additionally, the Fifth Circuit confirmed that such testimony is inadmissible per the Federal Rules of Evidence. [Cr. Dkt. No. 59 at 11].

forbidden state-of-mind testimony, this is no basis for a finding of ineffective assistance, as the vigilance demonstrated by counsel in attempting to prevent such testimony was on par with that of a reasonable advocate. First, counsel successfully moved *in limine* to preclude it. Second, counsel objected at least twice to the improper testimony, after which the trial court instructed the jury to disregard it. The Court is not convinced that, had the trial court regurgitated several times thereafter the same curative instruction, the result of Petitioner's trial would have been different. Indeed, such a desperate attempt to "unring the bell" might have had the perverse effect of burning into the jury's collective memory the forbidden testimony. [*See* Trial Tr. Vol. 3 at 64 (Trial court responding to counsel's repeated complaint of Agent Warzecha's testimony by noting "I think this point has been adequately ventilated now. If I say anything more, it becomes . . . not only ineffective but may be damning, so I would rather [just] move on.")]. Accordingly, the Court does not deem to be objectively unreasonable counsel's conduct in the face of Agent Warzecha's inappropriate state-of-mind testimony.

### E.  Failure to Object to Curative Instruction

In connection with the above improper expert testimony, counsel was also allegedly ineffective in failing to object that the aforementioned curative instruction was "confusing." Additionally, counsel allegedly should have complained of the Court's reference to Agent Warzecha as an "expert" in its instruction; according to Petitioner, such language "only accentuated the prestige that jurors already give agents . . . and therefore gave the jury the opinion that if the court stated that the agent is an expert, then the agent would surely know what he is talking about." [Dkt. No. 3-3 at 2-3].

First, Agent Warzecha was tendered and accepted as an expert witness. Naturally, then, the trial court referred to him as such. Second, the instruction was not confusing. Indeed, the

transcript reveals that, upon giving the instruction, the court asked the jurors if they understood it. The judge stated to the jury: "I see you're nodding at me, so I take it that you do." [Trial Tr. Vol. 3 at 62].

### F.  Cumulative Effect

Petitioner next claims that the cumulative effect of the above alleged errors amounts to a showing of ineffective assistance. The claims hereto addressed are baseless. Many baseless arguments do not coalesce into a valid one. The evidence before the Court, taken collectively, does not color the outcome of Petitioner's trial as unreliable.

### G.  Ineffective Assistance of Appellate Counsel

Petitioner lastly argues that he suffered ineffective assistance of appellate counsel. Specifically, Petitioner insists that trial counsel should have raised the issue of his own ineffectiveness on direct appeal. Ironically, in making this argument, Petitioner recognizes that an attorney is "not required to raise his own ineffectiveness . . . on direct appeal." [Dkt. No. 63-3 at 68 (citing *Page v. United States*, 884 F.2d 300 (7th Cir. 1989)]. Indeed, "[c]laims of inadequate representation which are not raised before the district court cannot be raised on direct appeal . . . [but rather] . . . have been relegated to later petitions under 28 U.S.C. § 2255." *United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1979).

Additionally, "counsel does not need to raise every non-frivolous ground of appeal available." *Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004) (quoting *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)). If appellate counsel cannot be deemed ineffective for failing to raise all *non-frivolous* arguments on direct appeal, he certainly cannot be ineffective for failing to raise meritless ones. Thus, to the extent that Petitioner believes appellate

counsel, for example, should have argued that the trial court's curative instruction was "confusing," there is no basis for a finding of ineffective assistance on appeal.

### III.    CONCLUSION

Although Petitioner raises many grounds for ineffective assistance, the Court, after reviewing each claim individually and collectively, finds no basis for concluding that Petitioner is entitled to relief. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 is **DENIED**. Additionally, should Petitioner seek one, a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

DONE this 20th day of July, 2007, in Laredo, TX.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**